EDNA HECK, Appellant, v. R. L. ANDERSON et al., Appellees.

ERVIN HECK, Appellant, v. R. L. ANDERSON et al., Appellees.

BONNIE BOYD, Administratrix, Appellant, v. R. L. ANDERSON et al., Appellees.

No. 46301.

FEBRUARY 8, 1944.

Doran, Doran & Doran, of Boone, for appellants.

Miller, Huebner & Miller, of Des Moines, and Robert E. Frush, of Adel, for appellees.

SMITH, C. J.—These three actions in the Dallas District Court, and a fourth brought in the Boone District Court, all arose from the same automobile-truck collision involving a truck being driven by defendant John Devine and owned by defendant R. L. Anderson. Defendant Floyd Norman was riding in the same vehicle as a relief driver but was sleeping at the time of the accident.

The same attorneys represent the several plaintiffs in the four actions. The attorneys for the three individual defendants are the same in each case. The pleadings in the four cases are identical so far as concerns the determination of this appeal. The applications of the three individual defendants for stay of proceedings were the same in each of the three cases involved here; the resistance thereto by the several plaintiffs and the court's ruling thereon were identical in each.

Counsel for defendants, after the commencement of the actions, wrote plaintiffs' attorneys as follows:

"We represent the defendants in the above four cases. We are informed that one of the defendants, John Devine, who was the driver of the truck involved, will be soon entering the army. It may be he has already been inducted.

"If Mr. Devine has not been inducted in the army, we would like to take his deposition by stipulation of the parties for use in the trial of the above entitled cases at some time that will be convenient to yourselves, Mr. Devine and ourselves. If on the other hand he has already been inducted into the service or goes into the service before this deposition can be taken, we will have to ask the court for a continuance of the cases under the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940, and the cases interpreting this act until such time as Hitler is licked. We have no thought of procrastination in this matter and would prefer to take the deposition of Mr. Devine by stipulation.

"Kindly let us hear from you relative to when this might be done."

Plaintiffs' attorneys replied promptly:

"Your letter of the 26th, with reference to the taking of the deposition by stipulation of Mr. Devine received. You may prepare a stipulation providing for the taking of the deposition of Mr. Devine by agreement.

"Would you have any objections to the deposition being taken in Perry or Boone? If you have, you name the place where you wanted to take it. I thought when I talked with Mr. Seaton it might be possible to have these cases disposed of without a trial. Do you know of our proposition of settlement? In any event, send us the stipulation and we will sign it forthwith."

Within a few days a written stipulation, captioned in each of the four cases, was entered into, the pertinent provisions of which are as follows:

"It Is Stipulated and Agreed by and between all of the parties to each of the above named proceedings that the deposition of John Devine may be taken on oral interrogatories and cross-interrogatories at the Webster County Court House, Fort Dodge, Iowa, on the 3rd day of September, 1942, at 10 :00 o'clock A. M. before Vernon L. Grant, Official Court Reporter, who is agreed upon as commissioner for the taking of said deposition, and said commissioner shall take down in shorthand the testimony given at the taking of said deposition, and thereafter transcribe the same and make an affidavit that said transcript is a true and correct transcript of said deposition.

"Thereupon said deposition may be offered and read in evidence at the trial of any one or all of the above captioned cases with the same force and effect as though a commission had been issued for the taking of said deposition in the manner and form as by statute provided in each of the said cases and as though all the formalities had been observed."

The deposition of defendant Devine was taken pursuant thereto and later the case in the Boone District Court was tried. During a part of that trial defendant Devine was present in

court under subpoena by plaintiff, not yet having actually departed for military service.

It appears from the attorney's affidavit in support of the motion for stay that in the trial of the Boone county case evidence was given of alleged admissions made by defendant Devine at the scene of and shortly after the accident; that defendants had no knowledge of these claimed admissions at the time Devine's deposition was taken and no reference thereto was made in his deposition, either by way of denial or explanation; and that it is reasonable to expect similar evidence will be offered by plaintiffs in the cases involved in this appeal.

Counsel for plaintiffs, by affidavit in resistance, say that defendant Devine was in the courtroom when the evidence of his admissions was offered in the Boone county case; that notwithstanding his availability at that time as a witness he was not put on the stand by defendants, but that they only used defendant Norman as a witness to deny such evidence.

Defendants' application for stay of proceedings is based upon the fact that defendant Devine "has been inducted into the armed services of the United States * * * and is now in the military service * * * and unable to leave his post to attend the trial of this cause or the preparation thereof for trial." It does not expressly purport to be made for his sole benefit but it prays "that all actions and proceedings in this court * * * be stayed." It is in no sense a motion for continuance under the Iowa statute then in force.

The trial court sustained the application generally. The result of that ruling would, of course, be to prevent prosecution of the cases against the nonservice defendants as well as against the one in service. Plaintiffs ask that the decision of the district court be reversed generally and the cases be remanded for trial against all defendants.

We cannot agree to either result. A clear distinction should be drawn between the rights, under the Soldiers' and Sailors' Civil Relief Act, of the defendant in military service, and the situation of the other defendants. A failure to make such distinction would inevitably lead to confusion and injustice in many subsequent cases, as it would certainly do in the instant case.

■ I. The Act of Congress, known as the Soldiers' and Sailors' Civil Relief Act of 1940, is expressly designed "to suspend enforcement of civil liabilities, in certain cases, *of persons in the military service of the United States*, in order to enable *such persons* to devote their entire energy to the defense needs of the Nation." 54 Stat. at L., section 100, 50 U. S. C., section 510. (Italics supplied.)

There is no suggestion in any part of the act that it is intended to protect the interests of any other person. 54 Stat. at L., section 101 (1), 50 U. S. C., section 511 (1), explicitly provides:

"The term 'persons in military service' * * * as used in this Act, shall include the following persons *and no others:*" (Italics supplied.)

54 Stat. at L., section 201, 50 U. S. C., section 521, says:

"At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff, or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it *by such person or some person on his behalf,* be stayed as provided in this Act, unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service." (Italics supplied.)

It is too clear for argument that the interests of the soldier only are to be considered and that we must assume that his codefendants joined in the application on his behalf alone. Language could not be clearer than the words of the act itself, but see; Jones v. State, 205 Ark. 806, 171 S. W. 2d 298; State ex rel. Frank v. Bunge, 16 Wash. 2d 358, 133 P. 2d 515.

■ II. Now, it is equally clear that the right of the soldier to a stay under the act does not depend alone upon his status as a material or important witness. The courts are jealous in defense of the right of a litigant to be present at the trial of his own case. We have held that the right should not be denied him unless for weighty reasons. In re Estate of Rogers,

226 Iowa 183, 283 N. W. 906; In re Estate of Townsend, 122 Iowa 246, 97 N. W. 1108.

" 'The necessity of the presence of a party at the trial of a civil action for damages against him is admittedly not absolute, but it is at least reasonable. Within due limitations, he ought to be allowed to testify personally before the jury rather than through the notoriously indifferent medium of deposition. He should be allowed to scrutinize the jury list, to confront the jury as it is empanelled to observe the responses of its members on the voir dire examination, to make suggestions and have them and his preferences and his possible relation to the jurymen considered, in the very important step of peremptory challenges. He should, if reasonably possible, have the opportunity to be personally before the court and the jury during the entire progress of his trial, manifesting his interest in its event and allowing those charged with the burden of decision to observe him, either for his advantage or to his possible detriment.' " Hellberg v. Warner, 319 Ill. App. 117, 124, 48 N. E. 2d 972, 975.

In the Rogers case, supra, 226 Iowa 183, 186, 283 N. W. 906, 907, we quoted with approval from Jaffee v. Lilienthal, 101 Cal. 175, 35 P. 636:

" 'It is the right of parties to be present at the trial of their cases. This right may be waived, and should be held to be waived, where the absence of the party is voluntary, and under circumstances which ought not to induce a reasonable man having a due regard for the rights and interests of others and of the public, all of whom are interested in the due and prompt administration of justice, to absent himself.' "

Certainly it cannot be said in the instant case that the interests of defendant Devine are properly safeguarded by a deposition taken in advance of trial, without knowledge of situations that might arise which he and he alone must be able to meet.

III. We have set out the correspondence between the attorneys, pursuant to which the stipulation was entered into and the deposition of defendant Devine taken in view of his imminent induction into the Army. It is contended by plaintiffs that

defendant Devine, by reason of the taking of this deposition, waived his right to a stay under the act, and, by inducing plaintiffs' counsel to consent to the taking of the deposition, estopped himself to assert any right to such stay.

All three defendants were represented by the same counsel. The taking of the deposition was a wise and proper precaution on behalf of those other defendants who were not entitled to a stay under the act. No consent of plaintiffs or their attorneys was necessary to be obtained for the purpose. The statute then in effect would have enabled it to be taken upon notice or by commission. Code of Iowa, 1939, sections 11358, 11359. See, now, Iowa Rules of Civil Procedure, Rule 140. Plaintiffs were not induced to change their position or yield any advantage. No element of contract or estoppel was present. It is not uncommon for attorneys to co-operate courteously in such matters and do by stipulation what they could have done or could have been compelled to do without stipulation. We have never before heard it contended that by so doing they waived any right of their client or estopped their client from asserting any right he would otherwise have had, and we do not think this subsequent application for stay involved any breach of faith between counsel or parties.

Events have emphasized the importance to defendant Devine of the right to be present at and participate in the trial of his own case. Defendant's counsel, in the Boone county trial, when confronted by what they claim was unexpected evidence of alleged admissions by Devine immediately after the accident, elected to depend on a denial by defendant Norman alone, though plaintiffs claim Devine was then still available as a witness.

It is reasonable to assume similar testimony of the alleged admissions will be offered on the trial of these Dallas county cases. Other now unforeseen situations may arise. We cannot say that what was done or left undone on behalf of Devine on the trial of the case in Boone county affects his right to be present at the trial of the cases still pending.

He was the driver of one of the vehicles involved in the accident. Statements made by him are admissible against him— in fact, unless a part of the res gestae, they are admissible against him alone. Presumably, he knows more about the facts

than the other defendants can possibly know. The Soldiers' and Sailors' Civil Relief Act was conceived for his benefit. It imposes upon the court the duty to grant him a stay unless "in the opinion of the court" his ability to conduct his defense is not materially affected by reason of his military service.

We are abidingly convinced the trial court wisely exercised its discretion so far as concerns a stay of the proceedings as against defendant Devine.

IV. There still remains to be considered the status of the case as against the other defendants. The application asks for a stay of *all* proceedings. The order granting it can be sustained as to nonservice defendants only if, and so far as, necessary to protect the interests of the service defendant.

54 Stat. at L., section 204, 50 U. S. C., section 524, of the act provides:

"Where the person in military service is a codefendant with others the plaintiff may nevertheless by leave of court proceed against the others."

The appellate court of Illinois, first district, second division, had occasion to consider this language in a case that involved joint liability of defendants, as heirs, for the debts of their ancestor. Hellberg v. Warner, supra, 319 Ill. App. 117, 135, 48 N. E. 2d 972, 979. In that case the appellate court, in upholding the decision of the lower court granting a stay, said:

"From an examination of the pleadings and the evidence in the instant case we think that the trial court might well have concluded that the soldier, in order to fully protect his interest in the property, should have the right to be present and take part in all of the proceedings."

In other words, the stay was granted as to all defendants, but it was done for the benefit and upon the application of the defendant who was in service. It was upon a showing that *his* interests would suffer if the case proceeded against the codefendants.

We conceive that to be the only construction that can be placed on the act. It is doubtful if any case can be found that

holds the legislation can be invoked for the benefit of any party except the person in service. In all cases that have been called to our attention, in which complete stay was granted to all defendants and not to the serviceman alone, there was some reason in law or fact why it could be said the interests of the serviceman would be affected by judgment against his codefendants or that he was a necessary party to the continued litigation against them.

In Griswold v. Cady, 27 N. Y. S. 2d 302, the trial court granted stay to both defendants because they were joint owners of the car involved in the accident and their liability was joint.

In Lanham v. Cline, Idaho, 44 F. Supp. 897, the court stayed proceedings because it held the interests of the defendant in service could not be adequately protected.

In Ilderton v. Charleston Consol. Ry. & Lighting Co., 113 S. C. 91, 101 S. E. 282, a continuance, under the Soldiers' and Sailors' Civil Relief Act of 1918, 50 U. S. C., sections 101–165, was granted because an employee, then in military service, whose alleged negligence was the basis of the action, might be liable over to defendant if judgment against defendant were allowed to stand.

No doubt there are other cases illustrative of this proposition.

There is no showing here that the serviceman would be prejudiced by a trial of the case against his codefendants if the stay is granted as to him. In an early decision, this court held the respective situations of a soldier defendant and his non-service codefendant to be distinguishable under a state statute quite similar to the Federal Act we are considering. Lucas v. Cassady, 12 Iowa 567. In that case the one defendant was granted a continuance because of his military status; the other was denied a continuance because his application was filed too late under the general statute relating to continuances.

The later case of Butler, Keith & Co. v. McCall & Sypher, 15 Iowa 430, decided under a somewhat different statute, held that because defendants were sued as a firm a continuance as to the defendant in service would necessarily operate as a continuance for all.

Back of the undoubted solicitude shown in this act for the interest and welfare of the man in service are the "*defense*

*needs of the nation."* While the man is the immediate bene-
ficiary, the whole theory of and justification for the legislation
is concern for the *public* interest. The court, should rigorously
uphold the individual's right, not merely because of his sacri-
fices and service but because of the nation's interest in main-
taining the highest possible degree of effectiveness in the per-
formance of that service. The stay as to the defendant in
service should not be denied upon any strained and technical
theory of waiver and estoppel; nor should plaintiffs' right to
proceed against nonservice defendants be interfered with unless
such interference is justified under our procedural rules for
granting continuance, or unless it appears the interests of the
service defendant would be prejudiced by trial, in his absence,
of the action against his codefendants.

We affirm the decision of the district court granting a stay
of proceedings as against defendant John Devine; and we re-
verse it as to the other defendants but without prejudice to
their right, if they so desire, to make such showing for a con-
tinuance as they can under our Iowa Rules of Civil Procedure.
—Affirmed in part; reversed in part.

HALE, MULRONEY, MANTZ, and WENNERSTRUM, JJ., concur.

BLISS, OLIVER, and GARFIELD, JJ., dissent.

MILLER, J., takes no part.

BLISS, J. (dissenting)—I agree with the majority that the
judgment or order appealed from should be reversed as to the
defendants Anderson, Norman, and Kraft Cheese Company.
I would go further and reverse as to the defendant Devine. I
dissent from the majority opinion for its failure to reverse as
to the latter defendant. My reasons for reversal are the same
as to all of the defendants.

The facts are the determining factors in this case, and I
will amplify the statement thereof in the majority opinion. On
January 13, 1942, a Buick coupé, driven by John Boyd and
carrying Edna Heck, Ervin Heck, and Ollena Royer, collided
with a semitrailer truck owned by Anderson and driven by
Devine. Norman was asleep in the cab. The connection of

the cheese company does not appear. The passengers in the coupé lived in Dallas county. Anderson and Norman were residents of Nebraska, and Devine lived at Livermore, in Humboldt county. The truck was traveling northward down an ice-covered hill, and the coupé, proceeding southward up the hill, passed in safety the cab and motor portion of the vehicle but collided with the rear part of the trailer. Boyd was killed and each of his passengers was injured. Four actions were brought against the defendants—three in the district court of Dallas county, and the Royer action in the district court of Boone county. Petitions, substantially identical except as to the matter of injuries, were filed in each case on June 26, 1942, by the same firm of attorneys. The same firm of attorneys represented all defendants in each action. The letter set out by the majority, written by defendants' attorneys stating they would like to take Devine's deposition to avoid a continuance under the Soldiers' and Sailors' Civil Relief Act of 1940, bears date of August 26, 1942. At this time Devine had received notice that he would soon be called into the service. It will be noted that the letter recites that the defendants "would like to take his deposition by stipulation." Plaintiffs' attorneys, on August 27, 1942, in answer, wrote defendants' attorneys to prepare a stipulation to take the deposition and they would sign it. The stipulation was executed on August 31, 1942, by the attorneys for plaintiffs and defendants, providing for the taking of the deposition by oral examination, to "be offered and read in evidence at the trial of any one or all of" the four actions. The deposition was taken on September 3, 1942, and a transcript of it was filed with the clerks of the respective courts in which the actions were pending. On September 9, 1942, defendants filed answers, substantially the same in each case. The Royer case came on for trial at the September 1942 term of the Boone County District Court. The trial of the action was begun on October 7th, and concluded on October 13, 1942. Just after court opened at 9 o'clock in the forenoon of October 7th, the attorneys of the plaintiff learned from opposing counsel that, although defendant Devine was at his home in Livermore, Iowa, he would not be present during the trial.

Plaintiff's attorneys were desirous of his being present at the trial and they had a subpoena served upon him on October 7, 1942, at Livermore, to appear as a witness for plaintiff on October 8, 1942. He appeared and sat in the courtroom as plaintiff put in her case. The sheriff and the coroner of Dallas county were witnesses for plaintiff. Each of them testified that they were at the scene of the collision after it occurred and that Devine told them the semitrailer truck got away from him as it came down the icy hill and jackknifed and the trailer swung into the path of the coupé. The answer of defendants admits that coupé struck the rear wheels of the trailer and knocked them from under it. One of these witnesses pointed out Devine, in the courtroom, as the person who made the admission. The plaintiff called Devine to the witness stand to ask him a few questions. Plaintiff then dismissed him as a witness. The defendants did not see fit to put him on the stand as their witness, either by calling him out of turn, before plaintiff rested, or while putting in their testimony. Instead, they read his deposition. Devine knew better than anyone else whether he made the admissions. If he had not made them, and was interested in the outcome of the case, he would have demanded that he be called as a witness to refute the testimony of the sheriff and the coroner, and Dyer, Jordan & Dyer and Miller, Huebner & Miller, the attorneys for the defendants, and Devine's codefendants, all would have insisted that he take the witness stand and deny the testimony. The fact that he did not take the stand as a witness in behalf of himself and his codefendants is convincing proof that there was no such insistence.

Many years ago Lord Mansfield, in Blatch v. Archer, 1 Cowp. 63, 65, enunciated the maxim that:

"All evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted."

It has been quoted and cited many times, lately in Boone v. Lightner, 319 U. S. 561, 570, 63 S. Ct. 1223, 1229, 87 L. Ed. 1587, 1593. The thought is often expressed in instructions, and the California Code of Civil Procedure, section 2061 (6), requires it to be done, on all proper occasions. It is axiomatic that where

evidence which would properly be a part of a case is within the control of the party whose interest it would naturally be to produce it, and he fails to do so, without any satisfactory explanation, the tribunal passing upon the matter may draw an inference that it would be unfavorable to him. The presumption is against such a party, and most strongly against him where the party is the witness who does not testify. The rule is universal that where evidence is introduced tending to fix liability on a party who has it in his power to offer evidence refuting the testimony and rebutting the inferences deducible therefrom, and he neglects or refuses to offer such evidence, the natural inference is that the evidence, if produced, would support, instead of rebut, the inferences against him. Courts have held that the presumption is conclusive. See Pennsylvania R. Co. v. Anoka Nat. Bk., 8 Cir., Minn., 108 F. 482, 486. In Golinvaux v. Burlington, C. R. & N. Ry. Co., 125 Iowa 652, 657, 101 N. W. 465, 467, the deceased was killed in a crossing accident. A companion with him in the wagon escaped injury. The plaintiff administratrix did not call this witness. This court said:

"For some reason the plaintiff did not call the man that was in the wagon who escaped with his life as a witness in the case. No excuse was given for not doing so, *and we can only surmise as to the reason therefor.*" (Italics ours.)

"Where facts are in evidence affording legitimate inferences going to establish the ultimate fact that the evidence is designed to prove, and the party to be affected by the proof, with an opportunity to do so, fails to deny or explain them, they may well be taken as admitted with all the effect of the inferences afforded." 1 Moore on Facts, section 571, citing many cases.

In Dickinson v. Bentley, 80 Iowa 482, 488, 45 N. W. 903, 905, the court held that such a failure to testify by a party was to be regarded as a "practical confession."

In the opening argument to the jury plaintiff's attorney commented upon the fact that Devine had not denied the admissions charged against him. What was the response to this by defendants' attorney? It was not that Devine was not

available as a witness to deny them because he was in the military service, but the only explanation made was "that it was not necessary for John Devine to be present to deny the same because the defendants' witness Floyd Norman had denied that any such statements were made." The excuse is not persuasive. Defendants were represented by able lawyers—lawyers who well understand that it always behooves a party to produce all the available evidence which the exigencies of the case demand, considering the weakness of the evidence already produced. Norman had testified that it was some other truck driver, and not Devine, who had made the admissions to the sheriff. There was a verdict for plaintiff in the Boone county case, which was set aside and the case tried again, at which time an application for stay under the Soldiers' and Sailors' Civil Relief Act of 1940 was denied. It must be borne in mind, in considering the failure to use Devine as an oral witness, that a denial of the testimony of the sheriff and coroner, by Devine, was of much more importance to him than to his codefendants, since under the court's instructions the admissions were to be considered only against him and not against the other defendants.

On November 4, 1942, not Devine alone but all of the defendants made application, in all the cases, for a stay under the act of 1940, alleging, as grounds, a good defense, and that Devine was "a necessary witness on his [own] behalf *and on behalf of the other defendants."* (Italics ours.) On November 9, 1942, all the defendants in the four cases (including the retrial of the Royer case) filed an amendment to their application, alleging as an additional ground that when Devine's deposition was taken he was asked no questions about his said admissions, and had no opportunity to explain them, and had no such opportunity at the trial of the Royer case, since he was not present because of such military service. On November 14, 1942, an affidavit supplementary to the hearing on the application to stay was made and filed by one of defendants' attorneys, stating again that Devine was prevented from denying the admissions in the Royer trial because of his military service. On November 16, 1942, an affidavit was filed by one of plaintiffs' attorneys expressly denying the statement that Devine was not available as an oral witness in the Royer case. The same statement that Devine had

opportunity to testify for defendants in the Royer trial was made by plaintiffs' attorney in the oral submission to this court, and in the written submission, and in neither argument has the statement been denied by opposing counsel.

The certificate of his commanding officer at Camp Dodge, Des Moines, Iowa, under date of October 21, 1942, states that Devine was inducted into the United States Army October 5, 1942, and was attached unassigned to this organization October 19, 1942. The Royer trial was had on October 7th to October 13, 1942, both dates inclusive. It is common knowledge that those inducted were given two weeks after induction to go home and prepare for actual entrance into the service. There is no contention in defendants' argument that Devine was not available as a witness during the first Royer trial. The matter is not discussed in the majority opinion, the thought expressed therein being that what was done or left undone on behalf of Devine in the Royer trial cannot affect his rights under his application for a stay in the other three cases. It was upon the request of defendants' attorneys that Devine's deposition, as their witness, was proposed and taken. It was to be read into the record of any or all of the four cases. Devine and his codefendants were content to use the deposition in the Royer trial even though he could have been put upon the witness stand and have given his testimony orally. He could have been present to help to select the jury and to advise and counsel with his attorneys throughout the trial. But neither he nor his codefendants, nor their attorneys, saw fit to avail themselves of the privilege and opportunity. They did not then think that his presence at the trial was necessary to properly present their defense, or that, in the words of section 521 of the Relief Act, the ''conduct [of] his defense [would be] materially affected by reason of his military service.'' Devine had every opportunity to make denial of his alleged admissions in the Royer case and did not do it. His failure to deny them is an admission of their truth, and that his testimony, if given, would have sustained the testimony of the sheriff and the coroner. There is no statement of his in the record to the contrary. Neither is there any direct statement in the applications or affidavits filed by the

defendants that he will deny the admissions in the future if given another opportunity. There is no showing that his presence for the trial of the cases involved in this appeal is any more necessary or urgent than it was in the Royer trial.

The Relief Act was enacted for the benefit of those in the various military services, and to aid in the nation's defense by having those in the armed forces with minds unbothered because of litigation at home affecting them or their property rights. But the serviceman is permitted to be the judge of whether the provisions of the act are of any benefit to him, or whether he wishes to take advantage of any of its provisions, or whether the prosecution of any suit will disturb his serenity of mind. If he and the owner of a truck which he was driving are protected by insurance, it is his privilege and right to waive any provision in the act permitting a stay of proceedings. There is no showing that his presence at the trials is of any more importance to him than it was when his attorneys procured the stipulation that his deposition could be read in all of the cases. As said in Royster v. Lederle, 6 Cir., Mich., 128 F. 2d 197, an applicant for a stay may by his own negligence, omissions, or deliberate act defeat his right to a stay. Is a litigant who induces his opponent to stipulate that the other may take the deposition of a witness to be granted a continuance of the trial because he overlooked interrogating him on some matter, or because an opposing witness testifies to a matter concerning which he would like the deponent to testify? It is uniformly true that some matters are overlooked in the taking of most depositions and the interrogating of most witnesses. It is oftentimes true that matters arise in the progress of a trial that make a party wish that he had a deponent present to testify in person. But I have never heard it urged as a ground for the continuance of a case on the motion of the one taking the deposition. Certainly the application of Anderson, Norman, and the Kraft Cheese Company should be denied on that ground alone and not because they may not be entitled to any benefits under the Relief Act. This is true even though they refused the opportunity to have Devine deny the admissions in the Royer trial.

The majority, with a seeming guileless naïveté, state "that we must assume that his [Devine's] codefendants joined in the

application on his behalf alone." Anyone subscribing to this statement likely will do so with his tongue in his cheek. There is no basis whatsoever for it in the record. The application and amendment are made by all of the defendants in behalf of all of them. These pleadings, and the affidavit filed by them on November 14, 1942, repeatedly state that Devine's presence "is necessary not only to his defense, but to the defense of all of the defendants," and that "John Devine is materially prejudiced as are also all of the other defendants, and this court should stay the proceedings against all of the defendants." Defendants' printed argument insists that this court affirm the order of the trial court as to all defendants. Following the majority outside of the record, but keeping within common knowledge and common experience in such matters, it may, with much sounder reason, be inferred that Anderson, the owner of the truck, is insured, and that the application was not made wholly for the benefit of Devine.

Devine was willing, when the stipulation for the deposition was proposed and signed, that all of the trials proceed to conclusion in his absence. He had no intention of being at the Royer trial. He was not interested in being present to select the jury and to aid and counsel with the attorneys for the defense. He was no more acquainted with the jury panel in Boone county than he will be in Dallas county. His home was in Humboldt county. He evidenced no desire to have any part in any of the trials before he entered the service. His whole conduct evidenced the contrary. The applications for stay were made and filed by the attorneys for the defendants after he entered the service.

I am sincerely interested that every person in the service have the full protection of the Soldiers' and Sailors' Civil Relief Act of 1940. It should be most generously and liberally construed in their behalf. But, as said in the reports of the Judiciary Committees of Congress:

" 'The lesson of the stay laws of the Civil War teaches that an arbitrary and rigid protection against suits is as much a mistaken kindness to the soldier as it is unnecessary. A total suspension for the period of the war of all rights against a soldier defeats its own purpose.' " Footnotes to Boone v. Lightner,

supra, 319 U. S. 561, 567, 63 S. Ct. 1223, 1227, 87 L. Ed. 1587, 1592.

The courts should be watchful that the immunities of the act be not put to unworthy purposes. Boone v. Lightner, supra. I think all of the defendants have waived and are estopped by the stipulation respecting the taking of the deposition and its use in all of the cases, and by the conduct of Devine and his codefendants in seeking a stay only for the purpose of doing that which they refused to do when they had the opportunity to avail themselves of it.

I would reverse as to all defendants for the reasons herein stated.

OLIVER and GARFIELD, JJ., join in this dissent.